**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

CHARLES GENTRY RODGERS
ADC #87695                                                                                           PETITIONER


VS.                                     5:07CV00229 JTR


LARRY NORRIS, Director,
Arkansas Department of Correction                                                   RESPONDENT

**MEMORANDUM AND ORDER**

**I. Background**

Pending before the Court[1] is a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket entry #2.) Respondent has filed a Response (docket entry #5), to which Petitioner has filed two Replies. (Docket entries #15 and #17.) Thus, the issues are joined and ready for disposition.

Before addressing Petitioner's habeas claims, the Court will review the pertinent procedural history of this case. On December 4, 2003, a jury in Phillips County, Arkansas convicted Petitioner of raping his girlfriend's twelve-year-old daughter. (Trial Tr. 48.) Petitioner was sentenced to life imprisonment in the Arkansas Department of Correction. *Id.*

Petitioner appealed his conviction to the Arkansas Supreme Court, where he argued that the trial court erred: (1) in limiting his cross-examination of the victim; (2) in sustaining the State's hearsay objection to a line of questions his attorney asked the police detective; and (3) in giving the deadlocked jury an improper *Allen* charge. On December 9, 2004, the Arkansas Supreme Court

---

[1] The parties have consented to proceedings before a United States Magistrate Judge. (Docket entry #9.)

affirmed Petitioner's conviction. *Rodgers v. State*, 360 Ark. 24, 199 S.W.3d 625 (2004).

On February 17, 2005, Petitioner filed a Rule 37 Petition in Phillips County Circuit Court raising numerous claims for postconviction relief. (Rule 37 Tr. 59-62.) On April 15, 2005, the trial court entered an Order denying the Petition, without a hearing. (Rule 37 Tr. 76.) Petitioner appealed to the Arkansas Supreme Court. On January 11, 2007, it affirmed the trial court's decision. *Rodgers v. State*, 2007 WL 70430 (Ark. Jan. 11, 2007) (unpublished decision).

In this § 2254 action, which was filed on September 6, 2007, Petitioner argues that: (1) the trial court improperly limited his cross-examination of the victim; (2) the trial court improperly limited his attempt to present the victim's inconsistent statements through the testimony of a police detective; (3) the trial court gave an improper *Allen* charge to the deadlocked jury; (4) his right to a speedy-trial right was violated; (5) he was provided ineffective assistance of counsel; and (6) he was denied his due process right to a pretrial determination of his competency.

For the reasons discussed below, the Court concludes that each of Petitioner's habeas claims is either without merit, or barred by the doctrine of procedural default.[2] Thus, the Petition will be

---

[2]Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petitioner may not obtain relief with respect to any claim adjudicated on the merits in a state court proceeding unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. *See* 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A presumption of correctness attaches to factual determinations made by a state court, and a habeas petitioner must rebut this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

denied, and the case will be dismissed, with prejudice.

## II. Analysis of Petitioner's Habeas Claims

**A.    The Trial Court Erred In Limiting Petitioner's Cross-Examination of the Victim**

Petitioner argues that the trial court violated his Confrontation Clause rights in limiting his cross examination of the rape victim, S.A.[3] (Docket entry #2 at 5.)  In order to place Petitioner's argument in context, the Court will briefly review the testimony of Mary King, a nurse who was called to testify before S.A. took the stand.

King worked as an R.N. at Helena Regional Medical Center, and examined S.A. in the hospital's emergency room.  (Trial Tr. 204.)  According to King, S.A. said that "she was in her bed and someone had messed with her."  (Trial Tr. 205.)  King asked S.A. what "messing with her" meant, and she answered that "he" started touching her bottom, got on top of her, and inserted his penis into her.  (Trial Tr. 212.)  In King's note, she wrote that the assailant "inserted his penis into her [S.A.]."  (Trial Tr. 219.)

On cross-examination, King was questioned about a medical record that stated "patient alleges that assailant inserted his penis *or hand* into her vagina." (Emphasis added.)  (Trial Tr. 216.)  King stated that this note was written by Dr. Yende.  (Trial Tr. 216-17.)  King was asked if S.A.'s statement to Dr. Yende was different from what S.A. told her.  King referred to her own note and she answered: "I can only say what she told me, and this is what she told me."  (Trial Tr. 219.)

S.A. testified that, on the morning of June 8, 2002, she awoke to find Petitioner on top of her pulling her pants down.  (Trial Tr. 241.)  She "felt something going in and out" of her.  (Trial Tr.

---

[3]Petitioner's victim, S.A., was twelve-years old at the time of the offense, and thirteen-years old at the time of trial.  (Trial Tr. 239.)

241.) S.A. told Petitioner to get off of her, and he said to be quiet. (Trial Tr. Tr. 241.) After S.A.'s mother entered her room, Petitioner slid off S.A. and told her mother that he was trying to find the pet rabbit in the room. (Trial Tr. 242.) According to S.A., as Petitioner slid off, he "put his stuff back in his underwears." (Trial Tr. 190.)

On re-direct examination, S.A. explained that she was "sure" that what she "felt going in and out of her" was Petitioner's penis. (Trial Tr. 257.) On re-cross examination, Petitioner's attorney asked S.A. whether she remembered "telling the people at the hospital that it was either a finger or penis?" (Trial Tr. 258.) S.A. answered "no," and then the prosecutor interposed an objection that Petitioner's attorney was "mischaracterizing the evidence." (Trial Tr. 258-59.)

In an ensuing colloquy, among counsel and the court, Petitioner's attorney indicated that he intended to cross-examine S.A. about her "definitive" statement to the jury that Petitioner's penis was inserted in her. (Trial Tr. 259-61.) The court ruled that asking such a line of questions on re-cross was outside the scope of the re-direct examination, and was also improper due to the age of the witness:

> She is 13 years old. She is young, and I think I have wide latitude on how far I am going to let you all go with this young girl in a dramatic situation like this. I'm not going to let the examination confuse her or the jury. Now, that's my ruling.

(Trial Tr. 259-60.)

On direct appeal, Petitioner argued that the trial court's ruling, which cut off his re-cross examination of S.A., resulted in a violation of his Confrontation Clause rights. In rejecting this argument, the Arkansas Supreme Court held that Petitioner's Confrontation Clause rights were not violated because: (1) the earlier testimony of King "adequately" established the fact that S.A. may have made an inconsistent statement to Dr. Yende; and (2) Arkansas law provides that the insertion

4

of either a finger or a penis into the vagina of a 12-year old constitutes rape. *Rodgers*, 360 Ark. at 28-29, 199 S.W.3d at 628 (citing Ark. Code Ann. §§ 5-14-103(a)(1)(C)(i) and 5-14-101(1), (10)).

Respondent contends that, because the Arkansas Supreme Court properly rejected this argument under the Confrontation Clause principles set forth in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), Petitioner's habeas claim is without merit.

In *Van Arsdall*, the Court held that the trial court erred in prohibiting "all inquiry" into a line of questioning designed to show the bias of a prosecution witness: "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " *Van Arsdall*, 475 U.S. at 680. However, the Court cautioned that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, . . .prejudice, confusion of the issues, . . . or interrogation that is . . . only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

As noted by the Arkansas Supreme Court, evidence of S.A.'s arguably inconsistent statement to Dr. Yende had already been introduced through King's testimony, and Petitioner's attorney was able to argue the alleged inconsistency to the jury. Furthermore, the allegedly inconsistent statement was of marginal relevance because Petitioner's penetration of S.A., with either his penis or his finger, constituted rape. Under these circumstances, the Court cannot say that the Arkansas Supreme Court's disposition of this claim was "contrary to" or an "unreasonable application of clearly established federal law," or an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d)

and (e). Thus, the Court concludes that this habeas claim has no merit.

**B.      The Trial Court Erred In Limiting Petitioner's Questioning of a Police Detective**

Petitioner argues that he was denied his due process right to "present a defense" when the trial court limited his attorney's questioning of a West Helena Police Detective, Billy Williams. (Docket entry #2 at 6-7.) In the State's case, Williams testified about the physical evidence. (Trial Tr. 263-69.) He also acknowledged that he interviewed "the witnesses and the suspect." (Trial Tr. 264.) On cross-examination, Petitioner's attorney questioned Williams about the chain of custody of certain physical evidence. (Trial Tr. 269-70.)

During S.A.'s trial testimony, Petitioner's attorney cross-examined her about whether she remembered telling Williams that she told Petitioner to get off of her. S.A. answered that she did.

In Petitioner's case, he called Williams as a witness. Petitioner's attorney asked him whether S.A. told him that "[Petitioner] made any statements to her?" (Trial Tr. 298.) The State objected on the grounds that any such statement would be hearsay and that it was improper impeachment of S.A. The trial court sustained the objection, "in part because the solicited testimony did not comply with Arkansas Rule of Evidence 613(b), in that S.A. had not first been given an opportunity to admit or deny the alleged statement." *Rodgers,* 360 Ark. at 30, 199 S.W.3d at 629.

On direct appeal, Petitioner argued that the trial court erred in its interpretation of Ark. R. Evid. 613, and that his attorney was properly questioning Williams to *impeach S.A.'s prior statement that she told Petitioner to get off of her.* (Docket entry #5, Ex. B at 3-5.) The Arkansas Supreme Court held that, because Petitioner had raised this argument for the first time on appeal, it was not preserved for appellate review. The Court noted that, during the trial, Petitioner's attorney's questions focused on whether S.A. told Williams that *Petitioner said that she should "be quiet."* On

appeal, Petitioner's argument focused on whether S.A. told Williams that *she told Petitioner he should get "off of her." See Rodgers*, 360 Ark. at 30, 199 S.W.3d at 629) ("A party cannot change his grounds for an objection or motion on appeal but is bound by the scope and nature of the agreements made at trial.").

Petitioner now argues that, in barring his attorney from asking Williams about what the victim told him, the trial court violated Petitioner's Due Process right to "present a defense." According to Respondent, Petitioner is in procedural default on this claim.

As a threshold matter, Petitioner raised this argument, both with the trial court and the Arkansas Supreme Court, solely as a violation of the Arkansas Rules of Evidence. Petitioner did *not* argue this alleged error also violated his federal constitutional rights. *See Osborne v. Puckett*, 411 F.3d 911, 917 (8th Cir. 2005) ("A state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process."). In addition, Petitioner did not obtain a ruling from the Arkansas Supreme Court on the merits of this claim because the Court concluded that Petitioner had changed the nature of his argument on appeal.

A federal court in a habeas action "is prohibited from reviewing an issue the state court has resolved on an adequate and independent state ground, including procedural default." *Winfield v. Roper*, 460 F.3d 1026, 1036 (8th Cir. 2006). A state procedural rule is an "independent" state basis for decision when "it is neither intertwined with, nor dependent upon, federal law[.]" *Malone v. Vasquez*, 138 F.3d 711, 717 (8th Cir. 1998) (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)). Moreover, it is an "adequate" basis for a decision when it meets the test articulated in *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991), *i.e.*, the state procedural rule "must have been firmly

established, regularly followed, and readily ascertainable" when applied to the petitioner. *Malone*, 138 F.3d at 717.

The Court concludes that Petitioner procedurally defaulted this habeas claim based on the well-established Arkansas rule that, on appeal, a party cannot change the grounds for an objection or motion. *See Otis v. State*, 355 Ark. 590, 142 S.W.3d 615 (2004) ("A party cannot change his grounds for an objection or motion on appeal, but is bound by the scope and nature of the arguments made at trial."); *Vanesch v. State*, 343 Ark. 381, 388, 37 S.W.3d 196, 200 (2001) (same); *Henderson v. State*, 329 Ark. 526, 531, 953 S.W.2d 26, 28 (1997) ("It is blackletter law that a party cannot change his grounds for an objection or motion on appeal and that parties are bound by the scope and nature of their arguments made at trial.").

Nonetheless, the Court must still proceed to the merits if Petitioner can demonstrate the "cause and prejudice" or "actual innocence" exceptions to procedural default. Petitioner contends that, "because he was denied the opportunity to put on evidence which went directly to impeaching the credibility of [S.A.'s] testimony from the witness stand, the trial court's ruling and the [Arkansas] Supreme Court's affirmance thereof tilted the balance of fairness in favor of the State." (Docket entry #15 at 5.)  This contention is merely a restatement of Petitioner's underlying argument, and does not establish either the "cause and prejudice" or "actual innocence" exceptions to procedural default.  Thus, the Court concludes that Petitioner's second habeas claim is without merit. **C.     The Trial Court Erred in the "*Allen* Charge" It Gave To The Deadlocked Jury**

Petitioner argues that the he was denied a fair trial when the trial court gave the jury an *Allen* charge[4], which he claims coerced the jury into finding him guilty. (Docket entry #2 at 8.)  After the

---

[4]*See Allen v. United States*, 164 U.S. 492 (1896).

close of the evidence, the jury began deliberations at 3:24 p.m on December 3, 2003. (Trial Tr. 350.) At 7:30 p.m. the jury foreperson informed the court that the jury was deadlocked eleven to one, but did not indicate the party their vote favored. The court recessed the jury for the night.

At 9:00 a.m. the following morning, the jury returned and the court instructed them as follows:

> Now, it is in the best interest of the State of Arkansas and the defendant that you reach an agreement in this case, if at all possible. Now, a hung jury means a continuation of the case. It doesn't it [sic]. It simply means a continuation of this case, and it also means a delay in the administration of justice.
>
> Now, I want you to consider, ladies and gentlemen, that this particular case will have to be decided by some jury and in all probability it will be decided upon the same testimony that you heard and the same evidence that was presented to you. It is unlikely, ladies and gentlemen, that the case can be submitted to any other 12 people in our county who is [sic] more intelligent than you are or more impartial than you are or more competent than you are to decide this case.
>
> Now, you took an oath as jurors and that oath obligated you to render verdicts. Your oath obligates you to do so. That verdict should be in accordance with the law, and I have given you the law. I have given you the instructions in the law, and your verdict should be in accordance with the evidence, and you have heard it.
>
> Now, in your deliberations, you should weigh and you should discuss the evidence, and you should make very reasonable effort to harmonize your individual views on the merits of the case. Each one of you, and there are twelve of you, should give due consideration to the views and the opinions of the other jurors who disagree with your views and opinions. No juror should surrender his sincere beliefs in order to reach a verdict. This verdict in this case should be the result of jurors free and voluntary opinion.
>
> Now, if this case is not dispose [sic] of or tried by you the city will have the expense — the state will have the expense of trying it again. Now, when we consider the length of time that we have spent trying this case this week, and the length of time it will take to try again, we will be simply mindful of the fact that the trial will be decided by some jury. Even a [sic] some future time, it will be decided by some jury.
>
> Now, I want to admonish and encourage each of you to lay aside any pride of opinion that an individual might have and consult with each other –- consult with

9

> each other for the purpose of harmonizing your views if at all possible, and it is your duty to apply the law that I have given you to the facts of this case. And, you have to deal with each other a spirit of candor honestly, truthfully, in order to arrive at a verdict. This Court cannot and will not make a comment on the evidence in this case.
>
> You are the sole judges of the weight of evidence and you are also will judge the credibility of the witnesses. This Court will not comment on that. You have heard the witnesses testify. You have heard the witnesses testify and you have the exhibits. And I want to make it clear to you that no juror should surrender his sincere beliefs. But by the same token, I want it clear that a hung jury only means a continuation of the case; and it only means a delay in the administration of justice. In my opinion, America has the greatest justice system. It's great. You are the judges. I am going to send you back to the jury room and to ask that you deliberate and return a verdict. You may retire to the jury room.

(Trial Tr. 357-60.) Immediately after the court gave this oral instruction, Petitioner's attorney requested that the jury receive a copy of the *Allen* instruction. (Trial Tr. 360.) This led to a discussion between the court and counsel about whether it was proper for the jury to receive a copy of the instruction. Although the record is not entirely clear, it appears that the court gave the jury a copy of the "deadlocked jury instruction" directly from AMCI 2d 8102.[5]

At 12:05 p.m., the bailiff informed the court that the jury had reached a verdict. (Trial Tr. 363.) Petitioner's attorney, *for the first time,* moved for a mistrial, arguing that the court had "added some language to [AMCI 2d 8102] that could be interpreted or misinterpreted by the jurors and be extremely prejudicial in the deliberation process in the sense it does not afford the defendant fair

---

[5]Although the jury had apparently received copies of all of the other instructions in the case, the court expressed its belief that existing case law prohibited the jury's receipt of a copy of the *Allen* instruction. (Trial Tr. 361.) Then the court stated "They are not entitled to it. Now, I've given them all the other instructions. I can redact that in some way if the State doesn't object." (Trial Tr. 361.) The State indicated that it did not object, and the court stated "I'll redact it and give it to them." (Trial Tr. 361.) In a later discussion with counsel, the court stated that "what the Court did was redacted — got a copy of the [*Allen*] instructions as printed in an AMCI, showed it to [Petitioner's attorney], showed it to [the prosecutor], and I gave it to the bailiff and the bailiff gave it to the jury."(Trial Tr. 364-65.)

deliberations, in essence, does not afford him a fair trial. We believe the jury is so tainted by the supplemental language of that instruction that the Court should declare a mistrial." (Trial Tr. 363.) The court denied the request for a mistrial (Trial Tr. 368), and the jury returned a guilty verdict. (Trial Tr. 370.)

On direct appeal, Petitioner argued that the trial court erred in denying his motion for mistrial because it added language to AMCI 2d 8102.[6] The Arkansas Supreme Court concluded that this

---

[6]The Arkansas model "deadlocked jury instruction" provides as follows:

It is in the interest of the State of Arkansas and of the defendant(s) for you to reach an agreement in this case, if at all possible. A hung jury means a continuation of the case and a delay in the administration of justice.

You should consider that this case will have to be decided by some jury and, in all probability, upon the same testimony and evidence. It is unlikely that the case will ever be submitted to 12 people more intelligent, more impartial, or more competent to decide it.

Under your oath as jurors, you have obligated yourselves to render verdicts in accordance with the law and the evidence. In your deliberations you should weigh and discuss the evidence and make every reasonable effort to harmonize your individual views on the merits of the case. Each of you should give due consideration to the views and opinions of other jurors who disagree with your views and opinions. No juror should surrender his sincere beliefs in order to reach a verdict; to the contrary, the verdict should be the result of each juror's free and voluntary opinion. By what I have said as to the importance of the jury reaching a verdict, I do not intend to suggest or require that you surrender your conscientious conviction, only that each of you make every sincere effort to reach a proper verdict. Therefore, I request the jury to retire for further deliberation for a reasonable time in an attempt to reach a verdict.

AMCI 2d 8102. On direct appeal, Petitioner specifically argued that the court's reference to the "costs and expense of trial" did not appear in the model instruction, and that the court mentioned twice that the case would have to be decided by some jury. (Docket entry # 5, Ex. B at 8.)
     Notably, the model instruction's "note on use" states that its language is to be used as a "guide" and a "trial judge may wish to give this instruction in his own words." Furthermore, the trial judge may "detail""the expense and length of time a case has been pending[.]"

argument was "procedurally barred" because Petitioner did not move for a mistrial immediately after the court read the instruction to the jury:

> This court has been resolute in holding that a motion for mistrial must be made at first opportunity. The reason for this is that a trial court should be given an opportunity to correct any perceived error before prejudice occurs. Here, instead of objecting after the circuit court instructed the jury on the dynamite charge, defense counsel waited to move for a mistrial until after the jury had completed its deliberations following the instruction. Because the motion was not made at the first opportunity, we hold that Rodgers's argument is procedurally barred.

*Rodgers*, 360 Ark. at 31, 199 S.W.3d at 630 (internal citations omitted).

In his habeas claim, Petitioner argues that he was denied a fair trial because the court improperly worded the *Allen* charge in a way that coerced the jury into finding him guilty. Respondent contends that Petitioner is in procedural default on this claim. The Court agrees with Respondent.

The Arkansas Supreme Court rejected Petitioner's argument on an adequate and independent state procedural ground: Petitioner delayed moving for a mistrial until the jury had completed its deliberations. *See Ferguson v. State*, 343 Ark. 159, 175, 33 S.W.3d 115, 125 (2000) (stating that Arkansas law is "well settled" that in order to preserve an argument for appeal an objection, including a motion for mistrial, "must be made at the first opportunity").

As cause to excuse his procedural default, Petitioner makes the conclusory assertion that the court somehow prevented his attorney from making a timely objection to the "modified" instruction. However, the record clearly refutes this contention. Petitioner's attorney had the opportunity to object or move for a mistrial immediately after the court read the instruction but he failed to do so. Thus, the Court concludes that Petitioner's third habeas claim is without merit.

**D.      The Trial Court Violated Petitioner's Right to a Speedy Trial**

Petitioner argues that he was denied his "due process" right to a speedy trial under Ark. R. Crim. P. 28.1. (Docket entry #2 at 10.) At a pretrial hearing, Petitioner's attorney moved to dismiss the charges based on a violation of the Arkansas speedy-trial provision. *See* Rule 28 of the Arkansas Rules of Criminal Procedure. (Docket entry #25 at 203-06.) Specifically, Petitioner argued that the trial court had erred in excluding various time periods under Rule 28. The court denied Petitioner's Motion.

Respondent argues that the doctrine of procedural default also bars this claim. Petitioner responds that his speedy-trial argument is properly presented in this habeas action because the Arkansas Supreme Court effectively reviewed and denied the claim when it conducted its Ark. R. Sup. Ct. Rule 4-3(h) review on direct appeal and concluded that there were no other erroneous rulings on objections or motions beyond the arguments raised on direct appeal. Alternatively, Petitioner argues that he has established "cause" to excuse his procedural default based on his attorney's failure to raise the argument on direct appeal.[7]

Even if the Court were to assume that the Arkansas Supreme Court disposed of his speedy-trial claim on the merits, Petitioner has still failed to state a cognizable habeas claim. Petitioner's underlying speedy-trial claim was premised *entirely on a violation of state law, under Ark. R. Crim. P. 28, not federal constitutional law*. Federal courts have consistently rejected § 2254 speedy-trial claims arising in state court based on violations of state speedy-trial law, rather than federal constitutional law. *See Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) ("Violation by state

---

[7]In Petitioner's Rule 37 appeal, he argued that his attorney provided him constitutionally ineffective assistance of counsel because he failed to assert the speedy-trial argument on direct appeal or in a writ of prohibition. The Arkansas Supreme Court concluded that this argument was not preserved for appellate review. *Rodgers*, 2007 WL 70430 at *2.

officials of a state speedy trial law, taken alone, does not present a federal claim reviewable on a habeas petition."); *Allen v. Department of Corrections*, 288 Fed. Appx. 643, 644-45 (11th Cir. 2008) (district court did not err in failing to address speedy-trial claim premised on violation of state speedy trial that made "no mention of a federal constitutional violation"); *Zerla v. Leonard*, 37 Fed. Appx. 130, *1 (6th Cir. 2002) (rejecting petitioner's claim that his federal constitutional rights had been violated based on a violation of a state-law speedy-trial rule — "Federal habeas corpus relief is not available on the basis of alleged violations of state law, but is confined to arguments raising violations of the Constitution."); *Hilgert v. Stotts*, 36 Fed. Appx. 348, *2 (10th Cir. 2002) (declining to issue certificate of appealability of the district court's rejection of a speedy-trial claim based on a violation of state law – "state-court determinations of state-law claims will not be examined in federal habeas proceedings"); *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (habeas petitioner who presented a "thorough and lengthy argument on the alleged violation of his right under state law to a speedy trial" in state court did not properly present claim that he was denied his federal constitutional right to a speedy trial).

Thus, the Court concludes that Petitioner's fourth habeas claim is without merit.

**E.     Petitioner Received Ineffective Assistance of Counsel**

Petitioner argues that his attorney provided him with ineffective assistance of counsel by failing to obtain a DNA sample from him to compare to semen on S.A.'s underwear. (Docket entry #2 at 11.) According to Petitioner, he would have been exonerated by that evidence.

At trial, Scott Sherrill, a forensic biologist with the Arkansas State Crime Laboratory, testified that he performed two tests to determine the presence of bodily fluids on S.A.'s underwear. (Trial Tr. 272-74.) First, he reviewed a microscopic x-ray of a smear slide extracted from a stain

on the underwear, which revealed two spermatozoa heads. (Trial Tr. 282.) According to Sherrill, this established, "without a doubt," the presence of semen on the victim's underwear. (Trial Tr. 282.) Second, he conducted a "P30 test" on the stain, designed to detect a "prostate antigen" specific to semen. This test was negative and indicated that "there was not a great deal of semen" on the underwear. (Trial Tr. 282.)

Sherrill did not personally conduct any DNA testing, but testified that cuttings from the underwear were submitted for DNA testing. (Trial Tr. 282.) He reviewed the report of Mary Robinette, who conducted the DNA testing. This report stated that there was "no DNA" found on the cuttings from the underwear, other than a blood spot that matched S.A's DNA. (Trial Tr. 285.)

On cross-examination, Sherrill was asked whether, for purposes of comparison, it would have been "helpful" to have a DNA sample from Petitioner. Sherrill answered "no" because there was no DNA profile found on the underwear, other than that of the victim. (Trial Tr. 286-87.) Given the "very limited amount of semen" present on the underwear, Sherrill considered it "questionable" whether the crime lab could get a DNA result. However, he was "100 percent positive" that there was semen on the underwear. (Trial Tr. 288-289.)

Finally, Sherrill was asked how much semen was needed to conduct a DNA test:

Q: And so if I understand your testimony, you can't tell us how much we need. You can only tell us you don't have enough.

A: I can't tell you I didn't have enough. All I can tell you is based upon our two tests that I did, that the amount was very limited. How much was there, I don't know. Whether there was enough to identify, evidently the answer to that would be no.

Q: So you don't know whether that was enough?

A: No.

(Trial Tr. 290.)

In Petitioner's Rule 37 appeal, he argued that his attorney was constitutionally ineffective for failing to obtain Petitioner's own DNA and compare it to the semen stain on the victim's underwear.[8] The Arkansas Supreme Court rejected this argument for the following reason:

> The [trial] court's order [denying Rule 37 relief] cited the testimony of a witness at trial for the State as the basis for its denial of appellant's argument. Scott Sherrill, a forensic biologist with the Arkansas State Crime Lab, testified at trial that the fluid specimens retrieved by the hospital and contained in the rape kit were insufficient in quantity to allow DNA testing, but confirmed that semen was present on the victim's clothing.
>
> As the crime lab lacked a sufficient amount of fluid upon which to perform DNA testing, this argument has no basis in fact. Had trial counsel sought DNA testing, it would have been impossible for the State Crime Lab to comply with the request. Trial counsel is not ineffective for failing to make an argument that is meritless, either at trial or on appeal. We find no error in the trial court's ruling and affirm on this point.

*Rodgers*, 2007 WL 70430 at *2 (internal citations omitted).

Petitioner contends that the Arkansas Supreme Court's disposition of his ineffective assistance of counsel claim was based on an incorrect interpretation of Sherrill's testimony, which was construed to mean that there was not enough semen on the underwear to conduct DNA testing. At a minimum, Petitioner asserts that Sherrill's testimony was vague, based on his later admission

---

[8]In order to prevail on an ineffective assistance of counsel claim, Petitioner must demonstrate that his attorney's performance was deficient, and that the deficiency prejudiced his defense. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness. *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006). If objectively unreasonable performance is established, the second prong requires a showing that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to Petitioner. *Lyons v. Luebbers*, 403 F.3d 585, 594 (8th Cir. 2005). Where a court determines that a petitioner has not demonstrated prejudice, under the second prong of *Strickland*, it is unnecessary to examine counsel's performance under the first prong.

16

on cross-examination that he "did not know" whether there was enough semen to conduct DNA testing.

Petitioner's argument misses the essence of Sherrill's testimony: he unequivocally testified that there was *no DNA found on the victim's underwear other than the victim's*. Thus, a "comparison" of this evidence to his own DNA was pointless, because there was no comparison to be made. The State *did not* argue that his DNA was on the underwear, and Petitioner was free to argue that his DNA was *not on* the underwear.

Under these circumstances, the Court cannot say that the Arkansas Supreme Court's disposition of this ineffective assistance of counsel claim was "contrary to" or an "unreasonable application of clearly established federal law," or an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d) and (e). Thus, the Court concludes that this habeas claim is without merit.

**F.     Petitioner's Right to "Due Process" Was Violated By His Attorney's Failure to Obtain a Review or Report on Petitioner's Mental Competence**

Finally, Petitioner argues that his attorney deprived him of "due process" by allowing him to proceed to trial, without reviewing a report on Petitioner's mental competence. (Docket entry #2 at 12-13.)

Prior to trial, Petitioner requested a competency evaluation, and, on June 5, 2003, the trial court granted Petitioner's request. (Docket entry #25 at 204.) On July 23, 2003, psychologist Mariyln Johnson conducted a forensic evaluation of Petitioner and concluded that he: (1) had the ability to understand the legal proceedings and assit his lawyer; (2) had "antisocial personality;" and (3) had the capacity to appreciate the criminality of his conduct and conform his conduct to the requirements of the law. (Docket entry #25 at 31.) Dr. Johnson's report reflects that it was submitted to the trial court on July 31, 2003, but it was not file-marked with the Phillips County

Clerk until December 5, 2003, *after* Petitioner was convicted.[9]  (Docket entry #25 at 31.) :

Petitioner claims that, because the report was not filed with the Clerk until after his trial, his right to due process was violated under *Drope v. Missouri*, 420 U.S. 162 and *Pate v. Robinson*, 383 U.S. 375 (1966) (holding that due process forbids a state from trying or convicting a defendant who is incompetent to stand trial).

As correctly argued by Respondent, Petitioner is in procedural default on this claim because it was not raised in either his direct appeal or Rule 37 appeal.  In his Rule 37 Appellate Brief, Petitioner mentioned an untimely mental evaluation, but it was in the context of arguing that a speedy-trial period was improperly excluded under Ark. R. Crim. P. 28.  Importantly, he made no argument that he was tried and convicted, without a proper competency determination, in violation of *Drope* and *Pate*.[10]  Petitioner makes no effort to argue that any of the exceptions to procedural default are applicable.

Thus, the Court concludes that Petitioner's final habeas claim is without merit.

### III. Conclusion

IT IS THEREFORE ORDERED THAT the Petition for Habeas Corpus under 28 U.S.C. § 2254 (docket entry #2) is DENIED, and this case is DISMISSED, WITH PREJUDICE.

---

[9] At a motion hearing just prior to the start of trial on December 2, 2003, the parties expressed some confusion about whether the report, which previously had been sent to counsel, was filed in the Clerk's office.  (Docket entry #25 at 204-06.)

[10] Perhaps this was because the report found Petitioner to be competent.

Dated this 12th day of November, 2009.

                                                      _____
UNITED STATES MAGISTRATE JUDGE